JOHN N. HANCOCK, Appellant, v. PETER FROK et al., Appellees.

**ADVERSE POSSESSION:** Acquiescence in Title. Exclusive possession, control, and use for 18 years of lands by a child after the death of his parents, the owners, under a claim of absolute ownership in which all the other children of the parents acquiesced, ripen into a full title by adverse possession.

Headnote 1: 2 C. J. pp. 75, 276.

Headnote 1: 1 R. C. L. 690.

*Appeal from Allamakee District Court.*—JAMES DE LAND, Judge.

### DECEMBER 14, 1926.

### REHEARING DENIED MARCH 22, 1927.

Suit in partition of real estate. Peter Frok is the only defendant who pleads. He denies that the plaintiff has any interest in the title to the land, and avers that he is sole owner thereof. He presents a counterclaim and cross-petition against plaintiff and against his codefendant Hart, praying to quiet his title. The decree was in his favor, and the plaintiff appeals.—*Affirmed.*

*William S. Hart*, for appellant.

*E. R. Acres*, for appellee.

EVANS, J.—The real estate in controversy was owned in his lifetime by Christian Frok, who died intestate in 1902. No administration was ever had upon his estate. He left surviving him as his only heirs his daughter, Karen (now Karen Madson), Martin Frok, and Peter Frok. The plaintiff holds a quitclaim deed from Karen Madson, and his claims are predicated thereon. It appears without dispute that Christian Frok came from Norway to the town of Waterville about the year 1867. His family consisted of himself and wife and three children, already named, and a sister, who made her home with him during her lifetime. He was a cobbler by trade, and pursued his calling more or less. Later, he also operated a little store, and later, a saloon. The property here involved is described in four parcels. The first consists of a quarter of an acre, upon which was situated the residence of the family; the second is a tract of 2.95 acres; and the remaining two are tracts of 10 acres each. We gather from the record that the tracts are contiguous, except the quarter acre upon which the residence stands. Christian Frok acquired one of these tracts in 1867, another in 1868, the third in 1874, and the fourth in 1885. These are contained partly within the town

of Waterville and partly outside thereof. The daughter, Karen, married in the year 1871, and has ever since lived within 200 feet of the old home. Martin married in 1874, and has not lived in the old home since that time, but has lived at all times in the town of Waterville. Peter never married, but continued to live with the old people throughout their lives, and after their death continued to occupy the property in controversy, claiming it as his own.

The claim of Peter is that, about the year 1880 or 1882, it was agreed and understood between him and his parents that, if he should continue to live with his parents, and if he should care for them in their later years and give them proper burial at their decease, he should have all the property owned by them; that it was further understood that the sum of $100 each should be paid to Martin and Karen, as their share of the little estate. He avers that he fully complied with the agreement on his part; that his mother died in 1901, and his father in 1902; that he cared for them to the end, and paid all expenses of their sickness and burial. He further avers that the title to one of the 10-acre parcels was held by his father in trust only for himself, in that he (Peter) had purchased and paid for such tract, and that the name of his father, as grantee, was inserted by mistake, and was never corrected; that his father held title to such parcel only in resulting trust for Peter himself. He further avers that, since the death of his father, he continued in the exclusive possession of all the property at all times thereafter, claiming in good faith to own the same; that such possession and claim on his part were fully known to his brother Martin and to his sister Karen, and never challenged until shortly before the bringing of this suit, and for the period of more than 18 years; and that all claim adverse to his rights has been fully barred by the statute of limitations.

Our examination of the record satisfies us with the decision reached by the trial court. We shall not attempt to fortify such decision by an undue setting forth of the evidence. It is contradictory at material points. Much incompetent evidence was introduced by both sides, which must be disregarded. Such evidence is so interwoven into the fabric of the case that it is almost impossible to separate the competent from the incompetent. This latter observation has more particular reference to the alleged

agreement and understanding between parents and children in the year 1880 or 1882.

It is apparent from the record that Christian Frok was a comparatively poor man when he arrived in this country from Norway. The property involved in this controversy was poor in quality then and now. Most of it consisted of timber land, suitable only for pasture and for the cutting of timber which might be obtained from it. A small part of it was tillable, and was so used. One tract was purchased for $50, another for $100, and the residence property for $400. The fourth tract was purchased by Peter in 1885 from Hagen. This is the parcel claimed by Peter in resulting trust. Peter's claim in that regard is corroborated by Hagen, who testified that Peter alone conducted all the negotiations of the purchase. The total present value of all the parcels in controversy is approximately $2,000 or $2,500.

As to the alleged agreement in 1882, the competent direct evidence, as distinguished from the incompetent, could not be deemed sufficient as proof of the source of Peter's title, if any. Nor is Peter's title necessarily dependent upon such proof. Such title is established, if at all, by adverse possession. The importance of the event of 1880 or 1882 is its effect upon the question of Peter's good faith in claiming exclusive title in himself, and as bearing on the question of ouster. The evidence in support of such good faith on his part is largely circumstantial. Martin testified on behalf of Peter that it had always been, since 1882, the understanding of the family that Peter was to have the property after the death of their parents. He testified also that his father had so told him. This testimony, however, should perhaps be ignored, as incompetent. He testified also that such purported arrangement had been the subject of conversation between himself and his sister Karen; that she professed no different understanding than his own on the subject; that both Martin and the sister did receive $100 each as their purported share of the estate. It further appears that Peter did pay all the funeral expenses of both his father and his mother; that no question was ever raised about it, as between him and his brother or his sister; that such payment was accepted by them as a matter of course. For eighteen years neither brother nor sister challenged Peter's ownership and right of exclusive possession, though they knew at all times that he was paying the taxes and

using the place exclusively,—on the one hand, building improvements thereon, and on the other hand, cutting timber therefrom.

Taking the record as a whole, we think it fairly appears that Martin and Karen understood Peter's relation to the property just as he did himself, and that they recognized his claim of ownership as just. The circumstances were sufficient to establish an ouster and to set the statute of limitations in running. It had fully run long before the beginning of this suit.

The decree of the district court is, accordingly, affirmed.— *Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.